U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 SEP -6 PM 3:47

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ISABEL VINSON,                                    )
                                                  )
          Plaintiff,                              )
                                                  )
v.                                                )        Case No. 2:22-cv-00020
                                                  )
CHARITY CLARK, in her official                    )
capacity as Attorney General for the State        )
of Vermont, and TRACY KELLY SHRIVER,              )
in her official capacity as State's Attorney for  )
Windham County,                                   )
                                                  )
          Defendants.[1]                          )

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**
(Docs. 52 & 54)

Plaintiff, Isabel Vinson, brings this action under 42 U.S.C. § 1983 against

Defendants Charity Clark, in her official capacity as Attorney General for the State of

Vermont, and Tracy Kelly Shriver, in her official capacity as State's Attorney for

Windham County, (collectively, "Defendants"), arising out of her citation for violating 13

V.S.A. § 1027 after she criticized a local business owner on social media. She facially

challenges 13 V.S.A. § 1027, arguing it is overbroad in violation of the First Amendment

right to freedom of speech (Count I) and void for vagueness in violation of the Due

Process Clause of the Fourteenth Amendment (Count II). She seeks a declaratory

judgment that 13 V.S.A. § 1027 violates the First and Fourteenth Amendments and a

permanent injunction enjoining Defendants from enforcing 13 V.S.A. § 1027. She also

requests attorney's fees and costs pursuant to 42 U.S.C. § 1988(b).

---

[1] At the time the pleadings were filed, the Attorney General for the State of Vermont was
Thomas J. Donovan, Jr. The case caption has been updated to reflect that Charity Clark assumed
office as the Attorney General for the State of Vermont on January 5, 2023.

On October 16, 2023, Plaintiff and Defendants filed cross motions for summary judgment. (Docs. 52 & 54.) The parties filed their respective responses in opposition on November 15, 2023, (Docs. 55 & 56), and Plaintiff filed her reply in support of her motion on December 13, 2023. (Doc. 61.) Oral argument was scheduled for May 17, 2024; however, the hearing was canceled on May 10, 2024, at which point the court took the pending motions under advisement.

Plaintiff is represented by Harrison M. Stark, Esq., James M. Diaz, Esq., Justin B. Barnard, Esq., Lia N. Ernst, Esq., and Noah A. Greenstein, Esq. Defendants are represented by David R. Groff, Esq.

## I.    Undisputed Facts.

### A.    Enforcement of 13 V.S.A. § 1027.

13 V.S.A. § 1027 provides:

(a) A person who, with intent to terrify, intimidate, threaten, harass, or annoy, makes contact by means of a telephonic or other electronic communication with another and makes any request, suggestion, or proposal that is obscene, lewd, lascivious, or indecent; threatens to inflict injury or physical harm to the person or property of any person; or disturbs, or attempts to disturb, by repeated telephone calls or other electronic communications, whether or not conversation ensues, the peace, quiet, or right of privacy of any person at the place where the communication or communications are received shall be fined not more than $250.00 or be imprisoned not more than three months, or both. If the defendant has previously been convicted of a violation of this section or of an offense under the laws of another state or of the United States that would have been an offense under this section if committed in this State, the defendant shall be fined not more than $500.00 or imprisoned for not more than six months, or both.

(b) An intent to terrify, threaten, harass, or annoy may be inferred by the trier of fact from the use of obscene, lewd, lascivious, or indecent language or the making of a threat or statement or repeated telephone calls or other electronic communications as set forth in this section and any trial court may in its discretion include a statement to this effect in its jury charge.

(c) An offense committed by use of a telephone or other electronic communication device as set forth in this section shall be considered to have been committed at either the place where the telephone call or calls

originated or at the place where the communication or communications or
calls were received.

The Vermont Attorney General, Windham County State's Attorney, and
Brattleboro Police Department do not have formal policies regarding the enforcement of
13 V.S.A. § 1027; however, during a September 2022 training course, the Windham
County State's Attorney told law enforcement that annoying conduct cannot be
prosecuted under 13 V.S.A. § 1027. The Vermont Criminal Justice Council, which is
responsible for training Vermont law enforcement agencies, does not provide formal
training on enforcing 13 V.S.A. § 1027.

Between 2013 and 2023, there were an average of sixty-nine arraignments and
twenty-nine convictions per year for charges of violating 13 V.S.A. § 1027. In the same
period, there were an average of 724 arraignments and 459 convictions per year for
charges of violating 13 V.S.A. § 1026, Vermont's disorderly conduct statute. On at least
forty-seven occasions between 2013 and 2023, individuals were charged under 13 V.S.A.
§ 1027 for harassing or threatening a family member or romantic partner. In that same
time frame, individuals were charged under 13 V.S.A. § 1027 for improperly calling 911
or police dispatch on at least ten occasions.

## B.   Plaintiff's Citation for Violating 13 V.S.A. § 1027.

Plaintiff is a resident of Brattleboro, Vermont, who "strongly believes that racism,
bigotry, and discrimination of any kind are not welcome" in Vermont. (Doc. 54-1 at 2,
¶ 6.) Since at least 2016, she has actively used Twitter, Instagram, and Facebook to
express her political opinions, engage in political debate, and criticize politicians and
others for behavior she believed mistreated women or was "fascist, racist, or otherwise
unacceptable." *Id.* at ¶ 7.

Christian and Christine Antoniello (the "Antoniellos") own the Harmony
Underground, a Brattleboro business. On or about June 1, 2020, Mr. Antoniello posted on
his personal Facebook page regarding the Black Lives Matter movement. He posted, in
part: "How about all lives matter. Not black lives, not white lives. Get over yourself no
one's life is more important than the next. Put your race card away and grow up." *Id.* at 3,

3

¶ 12 (internal quotation marks omitted). Several people commented on Mr. Antoniello's post to criticize his statement, including one person who stated she planned to boycott the Harmony Underground until Mr. Antoniello publicly apologized.

On June 6, 2020, at approximately 7:00 p.m., Plaintiff shared images of Mr. Antoniello's posts on her personal Facebook page and wrote:

> I'm so disappointed in what I just came across while mindlessly scrolling through Facebook, a business owner in the town I live in acting this way? Someone I once looked up to[]? Spewing hate rhetoric and then be[ing] unswayed as to why what he was saying was wrong?
>
> The reason the Black Lives Matter[] movement is important is because [people of color] are systematically murdered by the police at an alarming rate. If you can't get behind the movement, step aside, but don't go on an all lives matter tirade for attention. Thanks for coming to my Ted talk.
>
> If you are still confused, just look at the screenshots I've attached I guess.

(Doc. 54-7 at 22.)

A few minutes later, Plaintiff posted the images of Mr. Antoniello's posts again on her Facebook page, tagged the Harmony Underground's Facebook page, and wrote: "Disgusting. The owner of the Harmony Underground here in Brattleboro thinks this is okay and no matter how many people try and tell him it's wrong he doesn't seem to care[.]" *Id.* at 11. Plaintiff's post received over fifty comments from more than ten people. One comment asserted that Mr. Antoniello inflated the price of an item at the Harmony Underground, and Plaintiff replied, "I feel like everyone should leave a review on his page so he can never forget to be honest[.]" *Id.* at 16. A different person commented, "That guy is a pedophile and needs his ass beaten. He[']s a snitch. He had the cops in his shop all the time. I have a[ ]lot more to say. If [y]ou wanna know [private message] me[.]" *Id.* at 24. Finding this comment to be "unrelated" to her original post and "[a] little concerning[,]" Plaintiff deleted this comment shortly after it was made. (Doc. 54-3 at 80-83.)

In the comments on her post, Plaintiff also tagged a Facebook group called "Exposing Every Racist," which is a group where "people post screenshots of others being racist," but Plaintiff asserts that the group's rules encourage members "not to

4

harass other people." (Doc. 54-1 at 4, ¶ 21) (alterations adopted) (internal quotation marks omitted). She also posted images of Mr. Antoniello's Facebook posts on Exposing Every Racist's page. Exposing Every Racist is not based in Vermont. With her posts, Plaintiff intended to convey that "racism is gross" and was not attempting to threaten or intimidate the Antoniellos. (Doc. 54-3 at 68.)

On or about June 27, 2020, the Antoniellos contacted the Brattleboro Police Department to report that they were being harassed on Facebook because of Plaintiff's posts. Officer Tyler Law of the Brattleboro Police Department ("Officer Law") interviewed the Antoniellos for approximately thirty minutes on June 30, 2020. At that interview, the Antoniellos stated that they feared for their safety because Plaintiff tagged Exposing Every Racist, which they viewed as a "dangerous" group where "they put your name out there so people can come and find you and hurt you." (Doc. 54-1 at 5, ¶ 27) (internal quotation marks omitted). When Officer Law suggested the Antoniellos contact Facebook to address their concerns, Mr. Antoniello stated he "used every option" to remove the posts and he was "depending on the police department to do something to at least make a phone call and say 'you're causing a lot of problems.'" *Id.* at 6, ¶ 28 (internal quotation marks omitted). Officer Law told the Antoniellos he could charge Plaintiff with "disorderly conduct by electronic means." *Id.* at ¶ 29 (internal quotation marks omitted).

On July 7, 2020, Officer Law spoke with Plaintiff at the Brattleboro Police Department regarding the Antoniellos' report. At the meeting, Officer Law cited Plaintiff for disorderly conduct by electronic means in violation of 13 V.S.A. § 1027 because her post "was threatening because it tagged the group 'Exposing Every Racist,' and that action caused [the Antoniellos] to fear for their lives." (Doc. 52 at 2) (citing Doc. 52-1 at 2, ¶ 5). He explained that she was being cited "just based on" the Antoniellos' reported fear. (Doc. 54-1 at 6, ¶ 32.) Plaintiff characterized the Antoniellos' fear as not genuine, and Officer Law responded that he could not "determine if they are in fear or not; [or] if they're saying it just to say it." *Id.* at 7, ¶ 32 (internal quotation marks and citation omitted) (alteration in original). Officer Law informed Plaintiff that she would be

5

required to appear in court on August 18, 2020, and advised her to delete her post in the Exposing Every Racist group and "try and be careful with what [she] post[s]" in the future. *Id.* at ¶ 34. Plaintiff deleted her post in the Exposing Every Racist group.

The ACLU of Vermont submitted a public records request to the chief of the Brattleboro Police Department for documents related to Plaintiff's citation on July 17, 2020. The following day, Lieutenant Adam Petlock of the Brattleboro Police Department ("Lieutenant Petlock") reviewed the Antoniellos' case and wrote:

> The [probable cause] on this is very thin, especially for [Plaintiff]. I would find out more about the "Exposing [E]very [R]acist" group that they speak of and really cement why they are such a threat. If you can't come up with anything, forward it back and we'll try it, and the warrant request will basically act as a [state's attorney] review.

(Doc. 54-6 at 8.)

On July 22, 2020, Plaintiff discussed "justice alternatives[]" with Officer Law at the Brattleboro Police Department but declined to accept any offer without first consulting her attorney. (Doc. 54-1 at 7, ¶ 37.) Thereafter, Lieutenant Petlock reviewed the case and withdrew the citation. Lieutenant Petlock declined to charge Plaintiff based "on his experience as a police officer and supervisor[]" and did not rely on written guidelines or policies when reaching his decision. (Doc. 54-11 at 2.)

Plaintiff was never arrested and was not required to appear in court or pay legal counsel to address the criminal citation. Although in her Complaint she alleges that she refrained from making political posts on Facebook, it is undisputed that she continued to do so.

The Brattleboro Police Department did not forward a criminal case arising out of this citation to the Windham County State's Attorney's Office for prosecution, and neither that office nor the Vermont Attorney General's Office participated in the investigation of the Antoniellos' report, the citation, or the citation's withdrawal. Plaintiff brought this action against them.

## II.    Disputed Facts.

The parties dispute whether Officer Law investigated Plaintiff's intent when

posting on her Facebook. Plaintiff contends her intent was not criminal and her speech has been chilled because she is more reluctant to post about political topics and comment on individuals' or local businesses' political views on social media. She asserts that, on "many" occasions, she has "decided not to post on social media because of the citation" or posted and then "immediately" deleted her post. (Doc. 54-3 at 104-05.) She switched to her Twitter account to engage in political arguments because she had fewer followers there, made some of her Facebook posts visible only to her friends, and decided not to tag individuals and local businesses in posts criticizing them.

Defendants contend Plaintiff's speech has not been chilled because her political posts increased after she was cited and she continued to criticize individuals and local businesses on her social media. They assert that Plaintiff criticized a local business for what she viewed as racist posts less than two months after her citation and a local photographer for what she considered sexist behavior less than three months after her citation. Defendants point out that Plaintiff's post on Facebook in January 2021 criticized the politics of another local business. Although Plaintiff concedes these are her posts, she disputes that these businesses were "local" and contends the posts were "probably" only visible to her friends and she did not "tag" the businesses or otherwise comment directly on their pages. (Doc. 58 at 2, ¶¶ 6-7) (internal quotation marks omitted).

Notwithstanding the parties' dispute regarding the actual chilling effect of 13 V.S.A. § 1027 on Plaintiff, there is no genuine dispute that Plaintiff has used and intends to continue using social media to criticize individuals and local businesses and express her political views.

Citing four examples, Defendants assert that 13 V.S.A. § 1027 has been invoked in Windham County over the past ten years "primarily to address threatening and harassing behavior occurring in the domestic violence context." (Doc. 52-1 at 3, ¶ 8.) Plaintiff counters that the four examples cited do not support Defendants' assertion.

Plaintiff asserts that, in each circumstance where a person was charged under 13 V.S.A. § 1027 for harassing or threatening a family member or romantic partner or for improperly contacting emergency services, the alleged conduct violated another criminal

7

statute. Plaintiff cites four examples and alleges that most of the ten charges for violating

13 V.S.A. § 1027 between 2013 and 2023 involving 911 calls or calls to a police

dispatcher "involved either conduct that was deemed annoying or individuals

experiencing mental health issues." (Doc. 54-1 at 10, ¶ 53.) Defendants dispute that any

individuals were charged for being "annoying" or for having a mental health crisis. They

contend that Plaintiff's conclusions regarding whether the alleged conduct violated

another statute constitute improper legal argument.[2]

Defendants contend there is no evidence that 13 V.S.A. § 1027 has been used to

prosecute individuals for their political speech on social media. Plaintiff argues this fact

is not supported by admissible evidence.[3]

Notwithstanding the disputed facts, the parties effectively concede these facts are

not material because each side urges the court to decide this case as a matter of law. The

court agrees that no evidentiary hearing or finder of fact is required to decide whether 13

V.S.A. § 1027 is unconstitutional on its face.

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A "material" fact is one that "'might affect the outcome of the suit under the

governing law[,]'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015)

---

[2] The parties' legal arguments are not considered facts. *See Checksfield v. Internal Revenue Serv.*, 2024 WL 21549, at *2 (N.D.N.Y. Jan. 2, 2024) (explaining that "includ[ing] impermissible commentary, along with impermissible legal arguments[]" in a statement of facts is not permitted "regardless of whether the commentary is intended to assert a related fact, place in context or spin the asserted fact, or deny a perceived implication of an asserted fact[]") (internal quotation marks, footnotes, and citation omitted); *Moore v. Bitca*, 2020 WL 5821378, at *12 (D. Vt. Sept. 30, 2020) ("Legal arguments and varying interpretations of undisputed facts do not give rise to genuine issues of material fact that preclude summary judgment.") (citations omitted).

[3] *See* Fed. R. Civ. P. 56(c)(1) (stating party can assert fact is not genuinely disputed by "citing to particular parts of materials in the record[]" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact[]"). No evidence of prosecutions for political speech has been submitted to the court.

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)), while "[a] dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248).

On a motion for summary judgment, the court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court should deny summary judgment. *Anderson*, 477 U.S. at 251-52. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In adjudicating a motion for summary judgment, the district court's role "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). Not all disputed issues of fact, however, preclude summary judgment. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"When both parties have moved for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable

inferences against the party whose motion is under consideration.'" *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 212 (2d Cir. 2021) (quoting *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017)).

"Claims turning entirely on the constitutional validity or invalidity of a statute are particularly conducive to disposition by summary judgment as they involve purely legal questions." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 93 (2d Cir. 2003). For this reason, courts often resolve facial First Amendment challenges on summary judgment.[4]

## B.   Whether Plaintiff Has Standing to Bring Her Claims.

Defendants argue that no reasonable interpretation of the statute encompasses Plaintiff's social media posts and she lacks a legitimate fear of future enforcement of the statute against her. They thus contend that Plaintiff lacks standing to assert constitutional challenges to 13 V.S.A. § 1027 because the statute is unlikely to be enforced against her for the speech she intends to engage in on social media. Pointing out that Plaintiff continued to post her political opinions on social media after she was cited, Defendants also contend that her speech was not in fact chilled.

To establish the "irreducible constitutional minimum of standing[,]" a plaintiff must demonstrate three elements: (1) that he or she has "suffered an injury in fact[,]" (2) which is "fairly traceable to the challenged action of the defendant," and (3) which is "likely . . . [to] be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks, alterations, and footnote omitted). "[A] plaintiff must demonstrate standing for each claim he [or she] seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

---

[4] *See, e.g.*, *Nutritional Health All. v. Shalala*, 144 F.3d 220, 227 (2d Cir. 1998) (stating that plaintiff's facial First Amendment challenge "involves a purely legal question"); *United States v. Murphy*, 979 F.2d 287, 289 (2d Cir. 1992) ("[T]he constitutionality of a statute is a legal question subject to *de novo* review.") (citation omitted) (emphasis in original); *Centerfolds, Inc. v. Town of Berlin*, 352 F. Supp. 2d 183, 189 (D. Conn. 2004) ("Claims of facial invalidity may be resolved on summary judgment since they involve questions of law and do not often present disputed issues of fact.").

Within the "prudential consideration[s]" for standing, there is "a species of third party (*jus tertii*) standing by which a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the [policies] in question." *Lerman v. Bd. of Elections*, 232 F.3d 135, 143-44 (2d Cir. 2000) (internal quotation marks omitted) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55-56 n.22 (1999) (plurality opinion)). Prudential limitations on standing are relaxed "when the claims are based on the assertion of a First Amendment right[,]" and "[i]n such cases, the plaintiff is allowed to challenge a law that may be legitimately applied to his or her own expressive conduct if the law has the potential to infringe unconstitutionally on the expressive conduct of others." *Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010).

"Overbreadth, like facial vagueness, is an exception to the prudential rule forbidding parties from asserting the rights of third parties[,]" *id.* at 749, provided the plaintiff has standing to bring his or her own free speech claim and can bring a facial challenge seeking to invalidate the law's application on his or her own behalf and on behalf of third parties as well. *See Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013) ("[Courts] allow a party to bring an overbreadth challenge where that party satisfies the Article III requirement of injury-in-fact and where it can be expected satisfactorily to frame the issues in the case.") (internal quotation marks and citation omitted).

"Pre-enforcement challenges to criminal statutes are cognizable under Article III." *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (internal quotation marks and citation omitted). A plaintiff bringing a pre-enforcement facial challenge to a law, however, must demonstrate "an actual and well-founded fear that the law will be enforced against" him or her in order to establish standing. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). In such cases, "the alleged danger . . . is, in large measure, one of self-censorship; a harm that can be realized even without" actual enforcement. *Id.*

A plaintiff satisfies the injury-in-fact requirement in a pre-enforcement case where he or she demonstrates "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)

11

(internal quotation marks omitted). Although the plaintiff's conduct must be "*arguably* proscribed by the challenged statute," it need not be "*in fact* proscribed." *Picard*, 42 F.4th at 98 (emphasis in original) (alterations adopted) (quoting *Susan B. Anthony List*, 573 U.S. at 162). In other words, "[i]f a plaintiff's interpretation of a statute is 'reasonable enough' and under that interpretation, the plaintiff 'may legitimately fear that it will face enforcement of the statute,' then the plaintiff has standing to challenge the statute." *Pac. Cap. Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (quoting *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000)).

Plaintiff has used and intends to use her social media accounts to express her political opinions, engage in debate on issues of public import, and criticize individuals and businesses for behavior she deems unacceptable. Defendants do not dispute this course of conduct implicates Plaintiff's right to free speech. *See Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011) ("Speech on matters of public concern is at the heart of the First Amendment's protection.") (alterations adopted) (internal quotation marks and citation omitted); *Lynch v. Ackley*, 811 F.3d 569, 578 n.8 (2d Cir. 2016) ("[P]ractically all speech enjoys some First Amendment protection—with rare exceptions for such things as obscenity, fighting words, and yelling 'fire' in a movie theater.").

Although Defendants argue that Plaintiff has continued to engage in political speech on social media notwithstanding her citation for violating 13 V.S.A. § 1027, Plaintiff claims that she has altered the contents of her posts so that they were less assertive and not directed at individuals and has also altered whether and how she posts certain opinions. Plaintiff's continued use of social media does not negate her claim that her speech has been chilled due to potential enforcement of 13 V.S.A. § 1027 against her. *See United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (stating counterclaim plaintiff's "persistence in protesting" after lawsuit was filed against her "d[id] not mean that she did not suffer a sufficiently concrete injury to challenge the government's action[]" because "she may have felt obliged to tone down her rhetoric" and because "her continued pamphleteering may have simply been the result of her willingness to risk liability because of a belief in the value of civil disobedience[]").

12

When evaluating standing the court is "not called on to offer a definitive or comprehensive interpretation" of the challenged law. *Antonyuk v. Chiumento*, 89 F.4th 271, 336 (2d Cir. 2023). Instead, the court need only determine whether Plaintiff's interpretation of 13 V.S.A. § 1027 is "reasonable enough." *Id.* at 337 (internal quotation marks and citation omitted). In conducting this analysis, Defendants' interpretation of 13 V.S.A. § 1027 is not "authoritative." *Am. Booksellers Ass'n*, 484 U.S. at 395. To the contrary, "constructions of [Vermont] statutes by the [Vermont] Attorney General or by federal courts do not bind the local police officers or county [d]istrict [a]ttorneys." *Picard*, 42 F.4th at 99. Indeed, nothing prevents Defendants from advocating a different interpretation of 13 V.S.A. § 1027 in the future. *See id.* ("[D]espite the Attorney General's strategic concessions in this case, there is 'nothing that prevents the State from changing its mind,' as it is not 'forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation.'") (quoting *Vt. Right to Life Comm., Inc.*, 221 F.3d at 383).

13 V.S.A. § 1027 criminalizes: (1) "inten[ding] to terrify, intimidate, threaten, harass, or annoy[]"; (2) while "mak[ing] contact by means of a telephonic or other electronic communication with another[]"; and (3) either (a) "mak[ing] any request, suggestion, or proposal that is obscene, lewd, lascivious, or indecent[,]" (b) "threaten[ing] to inflict injury or physical harm to the person or property of any person[,]" or (c) "disturb[ing], or attempt[ing] to disturb, by repeated telephone calls or other electronic communications, whether or not conversation ensues, the peace, quiet, or right of privacy of any person at the place where the communication or communications are received[.]" *See State v. Hastings*, 330 A.2d 87, 88 (Vt. 1974) (stating 13 V.S.A. § 1027 "requires a tripartite showing of the basic elements[]" and "the prosecution must specifically select the act or acts which make up the crime").

The first element of 13 V.S.A. § 1027, intent, "may be inferred" from "the use of obscene, lewd, lascivious, or indecent language"; or "the making of a threat or statement or repeated telephone calls or other electronic communications as set forth in this section[.]" 13 V.S.A. § 1027. Defendants argue that Plaintiff's past and intended future

speech cannot reasonably fall under this statute because there is no evidence the intent element was satisfied. Plaintiff counters that the statute has no meaningful intent requirement.

In *Picard*, 42 F.4th 89, the Second Circuit addressed whether a protestor cited under a New York statute regulating speech near courthouses lacked standing because the protestor's conduct was not actually proscribed under its interpretation of the statute. The Second Circuit reasoned that, although "[i]t [was] of course possible" that the protestor's interpretation of the statute was "less persuasive than the State [of New York's] proffered interpretation," the protestor's interpretation was "not outside the realm of the 'arguable.'" *Id.* at 100. In doing so, it observed:

> To conclude that [the protestor] lacks standing because his fear of possible arrest and prosecution under NYPL § 215.50(7) is based on an unreasonable interpretation of that statute [would be to] appl[y] an arid conception of 'reasonableness,' given that a police officer did in fact arrest him for violating it, and a District Attorney declined to prosecute him only because the arresting officer did not measure the distance between [the protestor] and the courthouse.

*Id.* at 99.

In this case, Plaintiff was cited for violating 13 V.S.A. § 1027, and the reason the charge was not pursued was Lieutenant Petlock's "experience as a police officer and supervisor." (Doc. 54-11 at 2.) Defendants do not cite evidence that Lieutenant Petlock's decision was based on an understanding that Plaintiff's conduct did not fall within the statute. To the contrary, he characterized probable cause as "very thin," but not non-existent. (Doc. 54-6 at 8.) Plaintiff's interpretation is therefore "reasonable enough" for purposes of assessing her pre-enforcement standing. *Antonyuk*, 89 F.4th at 337 (internal quotation marks and citation omitted).

Once a plaintiff has established that his or her intended course of conduct implicates a constitutional right and is arguably proscribed by the challenged statute, the court must "determine whether a credible threat of future prosecution exists." *Picard*, 42 F.4th at 100. The threshold for establishing a credible threat of enforcement for a pre-enforcement challenge is "low[.]" *Id.* at 98. Courts "do not defer to the government's

14

interpretation of the statute or to its representations regarding the likelihood of a particular prosecution[.]" *Antonyuk*, 89 F.4th at 337 (citations omitted); *see also Picard*, 42 F.4th at 98 (stating courts "presume that the government will enforce the law as long as the relevant statute is recent and" in force) (internal quotation marks and citation omitted). A credible threat of prosecution must, however, be "imminent" and cannot be "imaginary or speculative." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (internal quotation marks and citations omitted).

"The identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue[.]" *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) (internal quotation marks and citation omitted). "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical[.]" *Susan B. Anthony List*, 573 U.S. at 164 (internal quotation marks and citation omitted). While evidence of past enforcement or threats of enforcement are "relevant to assessing the credibility of an enforcement threat," this type of evidence is not "necessary to make out an injury in fact." *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 139 (2d Cir. 2023) (emphasis omitted), *cert. denied*, 144 S. Ct. 486, (2023). "[C]ourts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Id.* at 138 (internal quotation marks and citation omitted).

Based on the prior enforcement of 13 V.S.A. § 1027 against her which resulted in a citation, Plaintiff's threat of future prosecution is not "imaginary or speculative." *Knife Rts., Inc.*, 802 F.3d at 384 (internal quotation marks and citation omitted).

Although Defendants argue that 13 V.S.A. § 1027 does not apply to Plaintiff's social media activity, the plain language of the statute does not contain this exception. As the Second Circuit explained in *Picard*:

> It may well be the case that if [the plaintiff] were to engage in the same course of conduct and then be arrested by a police officer unaware of the State's interpretation of the statute, [the plaintiff] would be able to obtain a dismissal under that interpretation once the State stepped in to give its position. But it gives no comfort to [the plaintiff] that [s]he must face the

possibility of arrest and a threatened prosecution again in order to engage in
conduct that the State already concedes is protected by the First
Amendment.

42 F.4th at 100.

In the context of a First Amendment challenge, the requirement to establish
standing is relaxed. *See Cayuga Nation*, 824 F.3d at 331 (noting "low threshold" which is
"quite forgiving to plaintiffs seeking preenforcement review[]") (internal quotation marks
and citation omitted); *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir.
2013) (observing that "somewhat relaxed standing and ripeness rules[]" apply to First
Amendment challenges). Although a close question, Plaintiff has established a credible
threat of future enforcement.[5]

Because Plaintiff has established a credible threat that 13 V.S.A. § 1027 will be
enforced against her for her speech on social media, she has satisfied the causation and
redressability requirements for standing as well.[6] *See Vitagliano*, 71 F.4th at 140

_____

[5] *Cf. Hedgepeth v. Vill. of Goshen*, 2010 WL 11712814, at *9 (S.D.N.Y. Mar. 31, 2010)
(concluding that plaintiff lacked standing for as-applied First Amendment challenge "[w]here the
speech in which [p]laintiff wishe[d] to engage [was] *plainly not prohibited* by the regulation, and
the authorities charged with enforcing the regulation ha[d] *clearly* taken the position that the
regulation d[id] not prohibit that speech as she fear[ed]") (emphasis supplied); *Schirmer v.
Nagode*, 621 F.3d 581, 583 (7th Cir. 2010) (holding that plaintiffs lacked standing to facially
challenge statute because "[w]hen these plaintiffs were arrested, according to this record, they
were *not even arguably* violating" the challenged statute and failed to "show[] a reasonable
prospect of future arrest for again violating that same provision[]") (emphasis supplied); *PeTA,
People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002)
(deciding that plaintiff lacked standing for "claims for prospective relief[]" after protestors were
threatened with arrest during demonstration because "defendants admit[ted] that they
misinterpreted" applicable statute, which applied "only to institutions of higher education and
not to junior high schools" and plaintiff did not allege intent to protest at "institutions of higher
education[]" in future).

[6] The dispute regarding whether Plaintiff's speech was actually chilled following her citation
does not negate Plaintiff's standing. *See N.H. Right to Life Pol. Action Comm. v. Gardner*, 99
F.3d 8, 14 (1st Cir. 1996) ("If [a credible threat of prosecution] exists, then it poses a classic
dilemma for an affected party: either to engage in the expressive activity, thus courting
prosecution, or to succumb to the threat, thus forgoing free expression. Either injury is
justiciable. . . . The bottom line is that, as long as a credible threat of prosecution exists, a litigant
has standing to mount a pre-enforcement challenge to the facial constitutionality of a statute on
the basis that her First Amendment rights arguably are being trammelled.").

(concluding plaintiff who established injury in fact for her pre-enforcement challenge also established causation and redressability because "her injury is fairly traceable to the challenged . . . law and can be redressed by her requested relief, *i.e.*, a declaration that the . . . law is unconstitutional and an injunction enjoining its enforcement[]"). Plaintiff therefore has standing to bring her overbreadth and facial vagueness challenges to 13 V.S.A. § 1027. As a result, Defendants' motion for summary judgment on standing grounds is DENIED.

### C.   Whether the Court Should Grant Summary Judgment on Plaintiff's Free Speech Claims.

Plaintiff argues that 13 V.S.A. § 1027 is facially overbroad because it criminalizes a substantial amount of protected speech, does not contain a meaningful intent requirement, and is content based. Defendants counter that Plaintiff interprets the statute too broadly, thereby ignoring its plain language, the principle of constitutional avoidance, and Vermont Supreme Court case law.

Facial challenges are "the most difficult challenge[s] to mount successfully[.]" *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (internal quotation marks and citation omitted). Generally, "[t]o succeed in a typical facial attack, [Plaintiff] would have to establish 'that no set of circumstances exists under which [13 V.S.A. § 1027] would be valid, or that the statute lacks any 'plainly legitimate sweep[.]'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citations omitted). "In First Amendment cases, however, th[e Supreme] Court has lowered that very high bar." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). Instead, "[t]he question is whether a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (alteration, internal quotation marks and citation omitted). This standard is "still rigorous[.]" *Id.*

"[I]mprecise laws can be attacked on their face under two different doctrines." *Morales*, 527 U.S. at 52. "First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate

sweep.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973)). "Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *Id.* For both overbreadth and facial vagueness challenges in First Amendment cases, the threat of unconstitutional applications "must not only be real, but substantial as well[.]" *Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006) (internal quotation marks and citation omitted); *see also Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976) (stating that facial vagueness challenges are only permitted if "the statute's deterrent effect on legitimate expression is . . . both real and substantial[]") (internal quotation marks and citation omitted).

## D.   Whether the Court Should Grant Summary Judgment on Plaintiff's Overbreadth Challenge (Count I).

With regard to Plaintiff's overbreadth challenge, the court must first "construe the challenged statute[]" because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Adams v. Zenas Zelotes, Esq.*, 606 F.3d 34, 38 (2d Cir. 2010) (per curiam) (internal quotation marks omitted) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)). Next, "the challenging party 'must demonstrate from the text of the law and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally[.]'" *United States v. Thompson*, 896 F.3d 155, 163 (2d Cir. 2018) (alterations adopted) (quoting *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)).

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Instead, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the [c]ourt for it to be facially challenged on overbreadth grounds." *Id.* at 801 (citations omitted); *see also United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional

applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep."). Without this showing by Plaintiff, her overbreadth challenge must fail and only a "case-by-case analysis" is required. *N.Y. State Club Ass'n, Inc.*, 487 U.S. at 14; *see also id.* n.5 (citation omitted).

"The overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'" *Id.* at 14 (quoting *Broadrick*, 413 U.S. at 613). For this reason, courts are reluctant to strike down a criminal statute passed by a duly elected legislature on overbreadth grounds, especially where, as here, the state's highest court has not struck down the statute despite having an opportunity to do so. "[T]here comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law[]" because "there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (emphasis in original).

In asserting her overbreadth argument, Plaintiff makes an array of claims: 13 V.S.A. § 1027 is (1) content based, (2) viewpoint discrimination, (3) sweeps in protected speech by regulating "obscene, lewd, lascivious, or indecent requests, suggestions, or proposals," and (4) lacks a meaningful intent requirement.

### 1.    Whether 13 V.S.A. § 1027 Is Content Based.

Plaintiff argues that 13 V.S.A. § 1027 reaches a substantial amount of protected speech because its prohibition on obscene, lewd, lascivious, or indecent language is impermissibly content based. She asserts that "[§] 1027's plain text . . . criminalizes a vast swath of commonplace, protected communications without regard to intent; and— within those prohibitions—the statute distinguishes between categories of speech based on their content and viewpoint." (Doc. 54 at 29.)

Generally, content-based statutes must satisfy strict scrutiny. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (stating content-based laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests[]"). In contrast, content-neutral

restrictions on speech need only satisfy intermediate scrutiny. *See Clementine Co. v. Adams*, 74 F.4th 77, 88 (2d Cir. 2023) (explaining content-neutral regulations must "(1) 'advance[] important governmental interests unrelated to the suppression of free speech' and (2) ' . . . not burden substantially more speech than necessary to further those interests[]'") (quoting *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 160 (2d Cir. 2013)).

"Content-based regulations 'target speech based on its communicative content.'" *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (quoting *Reed*, 576 U.S. at 163). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 643 (1994). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Reed*, 576 U.S. at 163.

"The principal inquiry in determining whether a regulation is content-based or content-neutral 'is whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys.'" *Clementine Co.*, 74 F.4th at 87 (quoting *Time Warner Cable Inc.*, 729 F.3d at 155). "In determining whether a regulation is content based or content neutral, [a court therefore] look[s] to the purpose behind the regulation[.]" *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) (citation omitted).

Here, Plaintiff claims that § 1027 is not only content based, it is viewpoint discrimination. Viewpoint discrimination "is a 'subset or particular instance of the more general phenomenon of content discrimination,' in which 'the government targets not subject matter but particular views taken by speakers on a subject[.]'" *Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 150 (2d Cir. 2004) (citation omitted) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829, 831 (1995)). It is "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829.

Plaintiff does not cite any authority for finding that a telephonic or electronic harassment statute constitutes viewpoint discrimination and the court has found none.

Section 1027 does not prohibit "offensive" speech as Plaintiff contends,[7] nor does it reflect a governmental preference or disfavor for certain viewpoints. 13 V.S.A. § 1027 thus does not authorize viewpoint discrimination.

Plaintiff next argues that the criminalization of a telephonic or electronic communication that "disturbs, or attempts to disturb, by repeated telephone calls or other electronic communications, whether or not conversation ensues, the peace, quiet, or right of privacy of any person at the place where the communication or communications are received[,]" 13 V.S.A. § 1027(a), is content based because its purpose and effect is to prohibit electronic communications based on their communicative content.

Laws that target "[t]he emotive impact of speech on its audience" may be content based. *Boos v. Barry*, 485 U.S. 312, 321 (1988), Section 1027, however, targets the repeated *making* of certain communications, which is conduct, not speech. *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006) (stating statute that "is justified without reference to the content of the regulated speech[]" is content neutral) (internal quotation marks and citation omitted). For example, in the context of a telephone call, a recipient may be disturbed by the repeated ringing or buzzing of a telephone or cell phone absent any speech. *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017) (concluding statute "[p]reventing automated messages to persons who don't want their peace and quiet disturbed" was content neutral). Likewise, a deluge of repeated texts and emails may disturb an individual's peace and privacy regardless of their content. "'A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.'" *Clementine Co.*, 74 F.4th at 87 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).

Section 1027(a) further prohibits telephonic or electronic communication that is accompanied by "any request, suggestion, or proposal that is obscene, lewd, lascivious, or indecent[.]"13 V.S.A. § 1027(a). "[T]he ordinary meaning of lewdness is sexualized

---

[7] *Cf. Matal v. Tam*, 582 U.S. 218, 243 (2017) (stating that "[g]iving offense is a viewpoint[]").

behavior that is shocking or repulsive to the community, while lasciviousness connotes sexual desire or lust." *In re A.P.*, 2020 VT 86, ¶ 20, 213 Vt. 291, 246 A.3d 399, 405. This aspect of the statute arguably "target[s] speech based on its communicative content[.]" *Reed*, 576 U.S. at 163. It does not, however, render the statute unconstitutional on overbreadth grounds because not all "obscene, lewd, lascivious, or indecent" speech is protected by the First Amendment. *See Counterman v. Colorado*, 600 U.S. 66, 73 (2023) (stating "obscenity" is "historically unprotected categor[y] of speech").[8]

Plaintiff's most persuasive argument is § 1027's prohibition on "indecent" speech is content based and targets constitutionally protected comments because the term "indecent" is subject to varying interpretations. *See Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989) (stating that "[s]exual expression which is indecent but not obscene is protected by the First Amendment"). The court thus turns to whether and how the Vermont Supreme Court has interpreted this statute and whether that interpretation cures its potential overbreadth.

### 2. Whether 13 V.S.A. § 1027's Prohibition on Obscene, Lewd, Lascivious, or Indecent Requests, Suggestions, or Proposals Reaches a Substantial Amount of Protected Speech.

Plaintiff argues that 13 V.S.A. § 1027 reaches a substantial amount of protected speech because it criminalizes "any request, suggestion, or proposal that is . . . indecent[.]" 13 V.S.A. § 1027(a).[9] The Vermont Supreme Court, however, has narrowed

---

[8] *See also Dugan v. State*, 2019 WY 112, ¶ 22, 451 P.3d 731, 739 (concluding electronic harassment statute that identified "lewd or obscene statements" in its definition of "harass" was not content based because it regulated "conduct without a significant impact on protected speech[]") (internal quotation marks omitted).

[9] Plaintiff makes no claim that she intends to engage in indecent comments for which she may be prosecuted. Accordingly, assuming *arguendo* that § 1027 may reach protected speech, that speech does not come within the ambit of Plaintiff's own First Amendment claim. *See Dickerson v. Napolitano*, 604 F.3d 732, 742 (2d Cir. 2010) (ruling plaintiff has standing to challenge "a law that may be legitimately applied to his or her own expressive conduct[]"); *see also United States v. Smith*, 945 F.3d 729, 737 (2d Cir. 2019) (ruling that plaintiff has established standing to challenge statute on First Amendment free speech grounds "only insofar as [his or] her own conduct falls within the ambit of the specific rule of law that [he or] she challenges[]").The court thus considers Plaintiff's arguments regarding this provision of 13 V.S.A. § 1027 solely to

13 V.S.A. § 1027 by requiring the "obscene, lewd, lascivious, or indecent" speech to take place in the context of a "sexual solicitation[,]" explaining that:

> The [Vermont] Legislature by its enumeration of three separate and distinct forms of breach of the peace by means of the telephone intended that [Vermont] prosecutors utilize the provision on obscene proposals when confronted with a sexual importunity. The section dealing with disturbing the peace by repeated anonymous calls is suitably charged when there is repeated harassment even without sexual overtones or invitations.

*Hastings*, 330 A.2d at 89.[10]

In light of controlling Vermont Supreme Court precedent, § 1027 is restricted to speech that also involves the *conduct* of sexual solicitation. Mere use of indecent, lewd, lascivious, or obscene words will not suffice.

Courts look to "any binding judicial or administrative construction" as well as "well-established practice of the authority enforcing the [statute]." *MacDonald v. Safir*, 206 F.3d 183, 191 (2d Cir. 2000). A state's highest court's interpretation of a state statute is binding. *See Mannix v. Phillips*, 619 F.3d 187, 199 (2d Cir. 2010) ("'State courts are the ultimate expositors of state law.'") (alteration adopted) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

> [W]hen a state law has been authoritatively construed so as to render it constitutional, or a well-understood and uniformly applied practice has developed that has virtually the force of a judicial construction, the state law is read in light of those limits. That rule applies even if the face of the statute might not otherwise suggest the limits imposed.

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988). Because of the Vermont Supreme Court's narrowing interpretation that content-based speech identified in § 1027 must take place in "a situation of sexual solicitation[,]" *Hastings*, 330 A.2d at 89, the statute targets conduct, not pure speech, thereby rendering it content neutral.

---

determine whether the statute prohibits a substantial amount of protected speech in relation to its plainly legitimate sweep.

[10] The word "anonymous" has since been removed from the statute. *See* 2013 (Adj. Sess.) Vt. Acts & Resolves No. 150, Sec. 5 (deleting "anonymous" from subsections (a) and (b)).

### 3. Whether 13 V.S.A. § 1027(b) Contains an Intent Provision.

Plaintiff initially argued that "§ 1027 authorizes criminal punishment of speech based on what, in practice, amounts to strict liability . . . [because] the statute allows a speaker to be convicted based on the fact of their speech alone." (Doc. 54 at 19-20.) She claimed "[t]he law's overbreadth authorizes criminal liability for a huge scope of protected communications without regard to a speaker's intent." *Id.* at 10. In her reply, however, Plaintiff clarifies that her "claim is not that § 1027 omits an intent requirement altogether[,]" (Doc. 61 at 8); rather, she criticizes the statute's illustrations of ways in which a speaker's intent may be inferred.

The Vermont Supreme Court has recognized its obligation to avoid "challenges based on facial unconstitutionality if there is a 'readily apparent construction [which] suggests itself as a vehicle for rehabilitating the statut[e]'" and therefore "narrow[s] and limit[s] [a] statute in light of the protections guaranteed by the United States and Vermont constitutions." *State v. Read*, 680 A.2d 944, 947 (Vt. 1996) (quoting *Gooding v. Wilson*, 405 U.S. 518, 520 (1972)) (second alteration in original); *Dombrowski v. Pfister*, 380 U.S. 479, 491 (1965)). This approach is consistent with the "long . . . tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 397 (citation omitted).

In *State v. Wyrocki*, 2012 VT 7, 191 Vt. 177, 38 A.3d 63, the Vermont Supreme Court declined to address the defendant's claims that 13 V.S.A. § 1027 "violates the First Amendment as applied" or "is unconstitutionally overbroad" and "is unconstitutionally vague[,]" because the "appeal turn[ed] on" the defendant's argument that her calls were not "'anonymous'" as required by statute at the time. *Id.* at ¶ 6, 191 Vt. at 180, 38 A.3d at 65. Interpreting a prior version of 13 V.S.A. § 1027 that prohibited anonymous telephone calls[11] in *State v. Wilcox*, 628 A.2d 924 (Vt. 1993), the Vermont Supreme Court held that

---

[11] In 2000, the statute was amended to add "electronic communications." *See* 1999 (Adj. Sess.) Vt. Acts & Resolves No. 124, Sec. 2 (inserting "or other electronic communication" following "telephone calls" throughout and making related changes).

"intent" for purposes of 13 V.S.A. § 1027 "should be measured at the time the person telephones." *Id.* at 926. In so ruling, it noted that state legislatures drafted telephone harassment statutes to attempt to avoid First Amendment overbreadth challenges and that other state courts had "responded to overbreadth challenges by holding that the statues proscribe conduct rather than speech." *Id.*; *see also id.* (emphasizing that statute prohibits "telephone calls . . . provided such calls are made with the intent specified in the statute[]") (quoting *State v. Hagen*, 558 P.2d 750, 753 (Ariz. 1976)). The court further noted that intent "is usually inferred from circumstances rather than shown by direct proof[,]" and "[t]he intent to make a threatening phone call can be inferred from the actions, conduct or words of the defendant." *Id.*[12]

Although *Wilcox* is instructive because it finds that the Vermont Legislature's intent was to prohibit certain harassing *conduct* rather than *speech*, it addressed *when* a criminal defendant must form the requisite intent. Plaintiff's challenge in this case is different because Plaintiff claims § 1027's intent requirement is constitutionally inadequate.

"Where state law is unsettled, [the court is] obligated to carefully . . . predict how the state's highest court would resolve the uncertainty or ambiguity." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (internal quotation marks omitted) (second alteration in original). In doing so, federal courts consider lower state court rulings. "[T]he absence of authority from [a state's] highest court does not provide [the court] license to disregard lower court rulings nor to analyze the question as though [the court] were presented with a blank slate." *Schoenefeld v. New York*, 748 F.3d 464, 469 (2d Cir. 2014). However, courts must be mindful that "no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable

---

[12] Since 13 V.S.A. § 1027 was enacted in 1967, subsection (b) has always described when "[a]n intent to terrify, threaten, harass, or annoy may be inferred by the trier of fact[.]" 1967 Vt. Acts & Resolves No. 171 Sec. 1, § 1027(b). The *Wilcox* court, however, did not address that portion of the statute.

25

opportunity to pass upon them." *Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 176 (1959).

The "bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature." *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 132, 969 A.2d 54, 56 (internal quotation marks omitted). When "the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous," Vermont courts "implement the statute according to that plain language." *State v. A.P.*, 2021 VT 90, ¶ 12, 216 Vt. 76, 81, 268 A.3d 58, 61 (internal quotation marks and citation omitted). If the legislative intent is not clear on the face of the statute, Vermont courts construe the statute "in light of the entire statutory scheme[,]" looking to "the statute's purpose, effects, and consequences." *Est. of Daniels by & through Lyford v. Goss*, 2022 VT 2, ¶ 11, 216 Vt. 161, 169, 274 A.3d 832, 837 (alteration, internal quotation marks and citations omitted). In determining legislative intent, Vermont courts often look to other states' interpretations of similar statutes. *See Hum. Rts. Comm'n v. Benevolent & Protective Ord. of Elks of U.S.*, 2003 VT 104, ¶ 13, 176 Vt. 125, 130, 839 A.2d 576, 581 ("Where there are similar statutes in other jurisdictions, [the court is] also guided by the interpretations of those statutes.").[13]

Plaintiff argues that 13 V.S.A. § 1027's intent element is "nullifie[d]" because intent may be inferred from the speech itself. (Doc. 54 at 17.) Defendants respond that § 1027's listing of ways in which intent may be inferred is both permissive and illustrative in its scope; it does not criminalize certain words or speech regardless of the speaker's intent. Defendants further contend that the Vermont legislature has merely

---

[13] The Second Circuit has "not addressed whether a federal court interpreting a state statute should be guided primarily by federal or state interpretive principles." *Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, 96 F.4th 539, 542 n.2 (2d Cir. 2024) (internal quotation marks and citation omitted). Vermont law and federal law, however, are in accord regarding the basic principles of statutory interpretation. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what is says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (alteration and internal citation omitted).

recognized the uncontroversial proposition that intent may be shown by circumstantial evidence. *See United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) ("Circumstantial evidence may be used to prove specific intent."); *United States v. Heras*, 609 F.3d 101, 106 (2d Cir. 2010) ("The law has long recognized that criminal intent may be proved by circumstantial evidence alone.").

Following *Virginia v. Black*, 538 U.S. 343 (2003), wherein a plurality of the Supreme Court held that a statute that allowed a jury to infer criminal intent based on cross-burning alone was unconstitutional, courts have held that laws that provide that the mere making of certain statements "shall" be "prima facie" evidence of intent effectively negate any intent requirement because a jury could find intent exclusively based on the speech itself.[14] As Defendants point out, 13 V.S.A. § 1027(b) is distinguishable from "prima facie" intent statutes and uses "may" rather than "shall" in identifying ways in which intent "may be inferred by the trier of fact." 13 V.S.A. § 1027(b); *see also State v. Boyajian*, 2022 VT 13, ¶ 22, 216 Vt. 288, 300, 278 A.3d 994, 1002 (internal quotation marks and citation omitted) (stating use of "may" indicates statute is "permissive and not mandatory[]"). Section 1027(b) thus *permits* but does not *require* the finder of fact to infer the requisite intent to terrify, intimidate, threaten, harass, or annoy "from the use of obscene, lewd, lascivious, or indecent language or the making of a threat or statement or repeated telephone calls or other electronic communications as set forth in this section." 13 V.S.A. § 1027(b). This interpretation is consistent with the Vermont Supreme Court's

---

[14] *See, e.g.*, *State v. Dugan*, 2013 MT 38, ¶ 61, 369 Mont. 39, 61, 303 P.3d 755, 771 ("Montana's Privacy in Communications statute, § 45-8-213, MCA, makes the 'use of obscene, lewd, or profane language . . . prima facie evidence of an intent to terrify, intimidate, threaten, harass, annoy, or offend' with no regard to the circumstances and facts of the particular case."); *State v. Kipf*, 450 N.W.2d 397, 402, 410 (Neb. 1990) (concluding provision that "[t]he use of indecent, lewd, or obscene language or the making of a threat or lewd suggestion shall be prima facie evidence of intent to terrify, intimidate, harass, annoy, or offend[]" resulted in "a mandatory and conclusive presumption of criminal intent, that is, factual establishment of the telephone call with its statutorily prohibited conduct necessarily ('shall') results in the conclusively established criminal intent of the caller[]"); *Baker v. State*, 494 P.2d 68, 71 (Ariz. Ct. App. 1972) (concluding effect of prima facie intent provision "create[d] a presumption that persons who use obscene, lewd or profane language do so with the specific intent to terrify, intimidate, threaten, harass, annoy or offend[]").

holding that 13 V.S.A. § 1027 requires proof of intent at the time the communication was made, which may or may not require an evaluation of the contents of the communication. *Wilcox*, 628 A.2d at 925-26. Section 1027(b) is, moreover, cabined by the Vermont Supreme Court's decision in *Hastings* that "the prosecution must specifically select the *act* or *acts* which make up the crime[.]" 330 A.2d at 88 (emphasis supplied). Plaintiff is thus simply incorrect that the statute negates the need to establish the speaker's intent or, in the alternative, deems certain language prima facie evidence of the requisite intent. Neither is true of the challenged statute.

Because "[p]rohibitions on speech have the potential to chill, or deter, speech outside their boundaries[,]" to mitigate concerns regarding "self-censorship[,]" the First Amendment requires statutes "to condition liability on the [government's] showing of a culpable mental state." *Counterman*, 600 U.S. at 75 (internal quotation marks omitted). The First Amendment "demands proof of a defendant's mindset" and "precludes punishment, whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce" the unlawful effect on the listener. *Id.* at 76. The intent requirement applies even to categories of unprotected speech like incitement to unlawful conduct, obscenity, and true threats. *See id.* at 78 (requiring "subjective" intent element in "unprotected-speech cases[]").

In light of the Vermont Supreme Court's observation in *Wilcox* that intent is "usually inferred from circumstances" such as "the actions, conduct or words of the defendant[,]" 628 A.2d at 926, 13 V.S.A. § 1027(b) properly reflects the general, well-established principle that "criminal intent may be proved by circumstantial evidence alone." *Heras*, 609 F.3d at 106. Nothing in the statute requires the finder of fact to ignore other evidence that may be relevant to assessing criminal intent. Unlike the mandatory "prima facie" intent statutes, when narrowly construed, the most plausible interpretation of 13 V.S.A. § 1027(b) distinguishes it from criminal statutes that criminalize speech alone, and renders the intent requirement constitutional.

### 4.    Whether 13 V.S.A. § 1027 Sweeps Too Broadly in Relation to its Permissible Applications.

Plaintiff asserts that because § 1027's lawful applications are few in relation to its unlawful applications, the statute is overbroad. Defendants counter that the statute is designed to reach conduct, is consistent with other states' harassment statutes which have withstood First Amendment scrutiny, and as construed by the Vermont Supreme Court is lawful in all of its applications.

Although Plaintiff identifies various hypotheticals depicting how the statute could chill protected speech and has identified several potentially problematic phrases, she has not met the "still rigorous standard[]" to establish an overbreadth challenge because her hypotheticals rest upon a flawed interpretation that there is effectively no specific intent requirement, that pure speech is targeted, and that the statute is wholly content based and represents viewpoint discrimination. *Moody*, 144 S. Ct. at 2397.

Weighing the statute's permissible prohibition on certain conduct against the potential that some protected speech may be prohibited, 13 V.S.A. § 1027 is not facially unconstitutional on overbreadth grounds.[15] When construed narrowly and viewed as a whole, the statute contains a specific intent requirement and merely identifies some ways in which intent *may* be inferred. As construed by Vermont's highest court, the statute does not reach a "substantial" amount of constitutionally protected speech as compared to its "plainly legitimate sweep." *Farrell*, 449 F.3d at 499 (quoting *Broadrick*, 413 U.S. at

---

[15] *See United States v. Waggy*, 936 F.3d 1014, 1018 (9th Cir. 2019) (rejecting First Amendment challenge to Washington telephone harassment statute where Washington state courts held that "the defendant must form the specific intent to harass at the time the defendant initiates the call to the victim[]") (internal quotation marks and citation omitted); *United States v. Stewart*, 65 F.3d 918, 930 (11th Cir. 1995) (noting that intent requirement in statute "serves to insulate the statute from unconstitutional application to protected speech[]") (internal quotation marks and citation omitted); *Thorne v. Bailey*, 846 F.2d 241, 244 (4th Cir. 1988) (stating intent requirement prevented telephone harassment statute from prohibiting "mere communication[]"); *Gormley v. Dir., Conn. State Dep't of Prob.*, 632 F.2d 938, 941-42 (2d Cir. 1980) (upholding Connecticut telephone harassment because it proscribed "the making of a telephone call, *with the requisite intent* and in the specified manner[]") (emphasis supplied); *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir. 1978) (concluding telephone harassment statute was constitutional because "its narrow intent requirement preclude[d] the proscription of mere communication[]").

615); *see also Golb v. Att'y Gen.*, 870 F.3d 89, 103 (2d Cir. 2017) (stating that "[a] statute . . . is not unconstitutional on its face because a single possible interpretation of it is unconstitutional[]" and adopting "more plausible[]" interpretation of state law that had "the virtue of being constitutional[]"). To the extent the statute reaches some protected speech, it advances an important governmental interest in ensuring individuals do not use communication devices to invade another's peace and privacy with the intent to terrify, intimidate, threaten, harass, or annoy them. It does not burden substantially more speech than necessary to achieve this objective. *See Gormley v. Dir., Conn. State Dep't of Prob.*, 632 F.2d 938, 941 (2d Cir. 1980) (noting "compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employed the telephone, not to communicate, but for other unjustifiable motives[]") (internal quotation marks omitted); *Wilcox*, 628 A.2d at 273 ("[13 V.S.A. § 1027] was added in 1967 in response to concern over increased use of the telephone as a vehicle to harass persons."). "Even in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Moody*, 144 S. Ct. at 2409. "In the absence of a *lopsided ratio*, courts must handle unconstitutional applications as they usually do—case-by-case." *Hansen*, 599 U.S. at 770 (emphasis supplied).

For the reasons stated above, Plaintiff's motion for summary judgment on her overbreadth claim is DENIED and Defendants' cross-motion for summary judgment on that claim is GRANTED.

## E. Whether the Court Should Grant Summary Judgment on Plaintiff's Claim Under the Fourteenth Amendment for Vagueness (Count II).

Plaintiff contends 13 V.S.A. § 1027 is unconstitutionally vague because various terms and phrases therein are subjective and undefined, including: intent to "harass" or "annoy"; "makes contact . . . with another"; a communication that is "obscene, lewd, lascivious, or indecent"; and a communication that "disturbs, or attempts to disturb, . . . the peace, quiet, or right of privacy of any person[.]" Plaintiff asserts that, because definitions of these terms are "subjective," the statute encourages arbitrary and

discriminatory enforcement. Defendants point out that Plaintiff is "ill-suited" to bring a facial vagueness challenge because it was a factual error, rather than the vagueness of the statute, which led to her citation. (Doc. 55 at 8.) For this reason, they argue that "[t]he specific solution to the hypothetical problems raised by Plaintiff should await an as-applied challenge to a prosecution implicating those factors." *Id.* at 9.

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "Thus, all vagueness challenges—whether facial or as-applied—require [a court] to answer two separate questions: whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *Farrell*, 449 F.3d at 485. Statutes are vague if they require "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. "[M]athematical certainty" is not required. *Hill*, 530 U.S. at 733 (citation omitted). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward*, 491 U.S. at 794.

The degree of vagueness tolerated is also judged in relation to the type of statute or regulation: "economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." *Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 680 F.3d 194, 213 (2d Cir. 2012) (citation omitted).

"[V]agueness in the law is particularly troubling when First Amendment rights are involved." *Farrell*, 449 F.3d at 485. "[W]here a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (alteration adopted) (internal quotation marks and citation omitted). Accordingly, "when a statute interferes with the right of free speech[,]" courts

apply "a more stringent vagueness test[.]" *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (internal quotation marks and citation omitted).

As Plaintiff points out, various courts have observed that the terms to "harass" and to "annoy" may have varied meanings. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971) ("Conduct that annoys some people does not annoy others."); *State v. Waters*, 2013 VT 109, ¶ 24, 195 Vt. 233, 242, 87 A.3d 512, 520 (stating that "harassment" has "widely divergent definitions and understandings . . . in various contexts[]"). She contends this vagueness is exacerbated by the phrases "obscene, lewd, lascivious, or indecent language"; "disturbs . . . the peace, quiet, or right of privacy of any person at the place where the communication or communications are received[]"; and "makes contact by means of a telephonic or other electronic communication with another[.]"13 V.S.A. § 1027(a)-(b). The words and phrases Plaintiff challenges, however, cannot be examined in isolation devoid of their statutory context. *See Wood v. Wallin*, 2024 VT 21, ¶ 13, 316 A.3d 266, 271 (stating legislative intent is derived from "not just isolated sentences or phrases, but the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system[]") (internal quotation marks and citation omitted).

To obtain a conviction under 13 V.S.A. § 1027, the prosecution must establish beyond a reasonable doubt that the defendant had a specific intent to "terrify, intimidate, threaten, harass, or annoy" another person and thereby "disturb[]" that person's "peace, quiet, or right of privacy" at the time the communication was made and at the place where it was received. 13 V.S.A. § 1027(a).[16] As construed by the Vermont Supreme Court, the statute thus identifies: (a) the intent required; (b) when that intent must be formed and by whom; (c) a conduct requirement as opposed to mere use of prohibited words; (d) to whom the conduct must be directed; (e) the impact on that person; and (f) where that impact must take place. Against this backdrop, the statute as construed is

---

[16] *Cf. Munn v. City of Ocean Springs*, 763 F.3d 437, 442 (5th Cir. 2014) (explaining that term "annoy" is impermissibly vague when it lacks "a definitive standard—i.e. who must be annoyed for the statute to be violated—rather than" mere use of word "annoy").

not impermissibly vague. Absolute certainty regarding the fringe applications of a statute
is not required.[17]

"[S]peculation about possible vagueness in hypothetical situations not before the
Court will not support a facial attack on a statute when it is surely valid in the vast
majority of its intended applications[.]" *Hill*, 530 U.S. at 733 (internal quotation marks
and citation omitted). Plaintiff has neither established that § 1027 is unconstitutionally
vague nor has she established it "'reaches a *substantial* amount of constitutionally
protected conduct[,]'" which is required for her facial vagueness claim as well. *Farrell*,
449 F.3d at 496 (emphasis supplied) (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.8
(1983)).

Plaintiff's motion for summary judgment on her facial vagueness claim is
therefore DENIED, and Defendants' cross-motion for summary judgment on that claim is
GRANTED.

---

[17] *See United States v. De Anda*, 2019 WL 1207452, at *4 (N.D. Cal. Mar. 14, 2019) (concluding
statute requiring "the 'specific intent' to annoy or harass" was not unconstitutionally vague);
*Ward v. Utah*, 398 F.3d 1239, 1253 (10th Cir. 2005) (explaining that specific intent requirements
may mitigate vagueness concerns regarding both notice and arbitrary enforcement); *Jones v.
Mun. of Anchorage*, 754 P.2d 275, 278 (Alaska Ct. App. 1988) (concluding statute prohibiting
certain anonymous telephone calls made "for the purpose of annoying . . . or harassing" another
was not vague because "the lawfulness or unlawfulness of the act turns not on the potentially
unpredictable, subjective reactions of another person, but rather on the specific intent of the
accused"); *Constantino v. State*, 255 S.E.2d 710, 713 (Ga. 1979) (rejecting vagueness challenge
to telephone harassment statute requiring "intent to annoy, abuse, threaten, or harass" because
"[t]he point is that the defendant telephones intending to harass and the defendant certainly
knows if he is doing that[]"). *But see People v. Norman*, 703 P.2d 1261, 1266-67 (Colo. 1985)
(concluding statute that required "intent to harass, annoy, or alarm another person[]" could lead
to "unfettered prosecutory discretion" because any person "might be subject to criminal
prosecutions because their acts are perceived by some official to annoy . . . others[]").

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED (Doc. 52), and Plaintiff's motion for summary judgment is DENIED (Doc. 54).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___ day of September, 2024.

Christina Reiss, Chief Judge
United States District Court